# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

## No. 25-2881
_____

## DEBORAH A. TOBACCO
### Plaintiff - Appellant

v.

## AVERA MCKENNAN D/B/A AVERA RESEARCH INSTITUTE
### Defendant - Appellee
_____

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH DAKOTA - WESTERN
### Honorable Camela Theeler
### Civil No.: 5:23-cv-05032-CCT

_____

## APPELLEE'S BRIEF
_____

**Lisa Hansen Marso**
**David J. Hieb**
**Boyce Law Firm, L.L.P.**
**300 South Main Avenue - P.O. Box 5015**
**Sioux Falls, SD 57117-5015**
**(605) 336-2424**

**ATTORNEYS FOR DEFENDANT-APPELLEE AVERA MCKENNAN
D/B/A AVERA RESEARCH INSTITUTE**

# SUMMARY OF THE CASE & ORAL ARGUMENT

Appellant, Deborah Tobacco, commenced a lawsuit asserting two causes of action against ARI related to her employment and eventual termination of her employment at ARI. The United States District Court for the District of South Dakota, Judge Camela C. Theeler presiding, granted a motion for summary judgment dismissing Tobacco's claims.

Tobacco argues that the dismissal should be reversed, asserting under *McDonnell Douglas* (1) she has established a *prima facie* case of discrimination; and (2) she has established that ARI's stated rationale for her termination, a RIF, was a mere pretext for discrimination. She also argues that she has established discrimination in general terms and conditions of her employment at ARI.

The District Court's dismissal of Tobacco's claims should be affirmed. Tobacco has failed to establish a *prima facie* case for discrimination, has failed to establish that the RIF was a mere pretext for discrimination, and has failed to establish that she was discriminated against in her terms and conditions of employment based on her race because she has not rebutted the factual basis underlying ARI's explanations nor shown that her race motivated the alleged discriminatory actions.

ARI does not request oral argument. However, should the Court set the case for oral argument, ARI requests 15 minutes.

i

Appellate Case: 25-2881    Page: 2    Date Filed: 01/20/2026 Entry ID: 5598399

## DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant – Appellee, Avera McKennan, d/b/a Avera Research Institute ("ARI"), advises the Court that it does not have a parent corporation and there is no publicly held corporation that owns 10% or more of its stock.

ii

Appellate Case: 25-2881     Page: 3     Date Filed: 01/20/2026 Entry ID: 5598399

# TABLE OF CONTENTS

Summary of the Case and Oral Argument................................................................... i

Disclosure Statement................................................................................................... ii

Table of Contents ....................................................................................................... iii

Table of Authorities ................................................................................................... v

Jurisdictional Statement ............................................................................................. 1

Statement of the Issues............................................................................................... 1

Statement of the Case................................................................................................. 2

    A. ARI and Tobacco ............................................................................................. 2

    B. The SYNCH Project ........................................................................................ 4

    C. The RIF and Tobacco's Termination .............................................................. 7

    D. Tobacco's Discrimination Lawsuit and Appeal ........................................... 10

Summary of the Argument........................................................................................ 11

Argument................................................................................................................... 12

  I.    Standard of Review........................................................................................ 12

  II.   Tobacco Has Failed to Establish a *Prima Facie* Case
       for Discrimination as to her Termination ..................................................... 14

        1. Alleged comparative evidence is insufficient ................................. 15

        2. ARI's alleged policy deviations are insufficient............................. 21

        3. References to ARI's workplace environment are insufficient.......... 26

Appellate Case: 25-2881    Page: 4    Date Filed: 01/20/2026 Entry ID: 5598399

III. Tobacco has Failed to Establish Pretext for ARI's Legitimate, Nondiscriminatory Termination Reason ....................................................... 32

    1. Tobacco has not shown that ARI's explanation has no basis in fact................................................................................ 35

    2. The timing of Tobacco's termination does not establish pretext...... 37

    3. ARI's alleged failure to follow its RIF and discrimination policies does not establish pretext ................................................................ 39

    4. No prohibited reason motivated the termination decision ................ 41

IV. Tobacco Has Failed to Establish that She was Discriminated in Her Terms and Conditions of Employment Prior to Her Termination Based on Her Race.................................................................. 41

    1. Standard applicable to Tobacco's general discrimination claims..... 42

    2. Meeting absences do not show discrimination ................................. 43

    3. Reduced Decision-Making as to SYNCH......................................... 45

Conclusion ......................................................................................................... 48

Certificate of Compliance ................................................................................. 49

Certificate of Service ........................................................................................ 49

iv

# TABLE OF AUTHORITIES

## CASES

*Ahmed v. Am. Red Cross*,
  218 F.3d 932 (8th Cir. 2000) ........................................................................1,32

*Alexander v. Pathfinder, Inc.*,
  189 F.3d 735 (8th Cir. 1999) .................................................................2,14,16,45

*Arraleh v. Cnty. of Ramsey*,
  461 F.3d 967 (8th Cir. 2006) ..............................................................................38

*Axness v. Aqreva LLC,*
  118 F. Supp. 3d 1144 (D.S.D. 2015) ..................................................................10

*Bailey v. U.S. Postal Serv.*,
  208 F.3d 652 (8th Cir. 2000) ..............................................................................12

*Beasley v. Warren Unilube, Inc.*,
  933 F.3d 932 (8th Cir. 2019) ..........................................................................1,16

*Bloom v. Metro Heart Grp. of St. Louis, Inc.*,
  440 F.3d 1025 (8th Cir. 2006) .......................................................................13,14

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)...................................13

*Chay-Velasquez v. Ashcroft*,
  367 F.3d 751 (8th Cir. 2004) ..........................................................................2,42

*Clark v. Runyon*,
  218 F.3d 915 (8th Cir. 2000) ..........................................................................2,47

*Cox v. Mortg. Elec. Registration Sys., Inc.*,
  685 F.3d 663 (8th Cir. 2012) ..............................................................................42

*Culton v. Missouri Dep't of Corr.,*
  515 F.3d 828 (8th Cir. 2008) ..............................................................................12

Appellate Case: 25-2881    Page: 6    Date Filed: 01/20/2026 Entry ID: 5598399

*Davis v. KARK-TV, Inc.*,
421 F.3d 699 (8th Cir. 2005) ..................................................................14

*Ebersole v. Novo Nordisk, Inc.*,
758 F.3d 917 (8th Cir. 2014) .................................................................16

*Emps. Mut. Cas. Co. v. Wendland & Utz, Ltd.*,
351 F.3d 890 (8th Cir. 2003) .................................................................13

*Erenberg v. Methodist Hosp.*,
357 F.3d 787 (8th Cir. 2004) ........................................................33,44,46

*Fleck v. Wetch*,
937 F.3d 1112 (8th Cir. 2019) ...................................................14,16,45

*Floyd v. State of Missouri Dep't of Soc. Servs., Div. of Fam. Servs.*,
188 F.3d 932 (8th Cir. 1999) ................................................................40

*Gibson v. Am. Greeting Corp.*,
670 F.3d 844 (8th Cir. 2012) ..............................................................34

*Grant v. City of Blytheville, Arkansas*,
841 F.3d 767 (8th Cir. 2016) ...........................................2,14,42,43,44,45

*Habib v. NationsBank*,
279 F.3d 563 (8th Cir. 2001) ........................................1,18,19,21,34

*Henderson v. Ford Motor Co.*,
403 F.3d 1026 (8th Cir. 2005)...............................................2,33,41,44,46

*Herrero v. St. Louis Univ. Hosp.*,
109 F.3d 481 (8th Cir. 1997) .....................................................1,15,32

*Hervey v. Cnty. Of Koochiching*,
527 F.3d 711, 720 (8th Cir. 2008) ......................................................37

*Hutson v. McDonnell Douglas Corp.*,
63 F.3d 771 (8th Cir.1995) ......................... 2,10,14,30,33,34,36,37,42

Appellate Case: 25-2881    Page: 7    Date Filed: 01/20/2026 Entry ID: 5598399

*Johnson v. Arkansas State Hosp.*,
   282 F. App'x 497 (8th Cir. 2008).................................................................1,33,47

*Johnson v. Securitas Sec. Servs. USA, Inc.*,
   769 F.3d 605 (8th Cir. 2014) ..........................................................26,27,30,31

*Lewis v. Heartland Inns of Am., L.L.C.*,
   591 F.3d 1033 (8th Cir. 2010) ........................................................26,27,30,31

*Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.*,
   387 F.3d 705 (8th Cir. 2004) ............................................................................12

*Mississippi River Corp. v. F. T. C.*,
   454 F.2d 1083 (8th Cir. 1972) ..........................................................................42

*Muldrow v. City of St. Louis, Missouri*,
   601 U.S. 346 (2024)...........................................................................................43

*O'Brien v. Department of Ag.*,
   532 F.3d 805 (8th Cir. 2008) ............................................................................34

*Price Waterhouse v. Hopkins*,
   490 U.S. 228 (1989)...........................................................................................30

*Reeves v. Sanderson Plumbing Prod, Inc.*,
   530 U.S. 133 (2000)......................................................................................26,27

*Schaffhauser v. United Parcel Serv., Inc.*,
   794 F.3d 899 (8th Cir. 2015) .............................................. 1,23,24,34,35,39,40,41

*Smith v. International Paper Co.*,
   523 F.3d 845 (8th Cir. 2008) ................................................................18,21,34

*Strate v. Midwest Bankcentre, Inc.*,
   398 F.3d 1011 (8th Cir. 2005) ..........................................................................34

*United States v. Meyer*,
   914 F.3d 592 (8th Cir. 2019) ............................................................................13

Appellate Case: 25-2881    Page: 8    Date Filed: 01/20/2026 Entry ID: 5598399

# STATUTES

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1331 ...................................................................................1

28 U.S.C. § 1367 ...................................................................................1

42 U.S.C. § 2000e .................................................................................1

42 U.S.C. § 2000e-2(a)(1) ...................................................................26

42 U.S.C. § 2000e-3(a) ........................................................................26

Eighth Circuit Rule 28A(h)(2) ............................................................49

Fed. R. App. P. 26.1 ...............................................................................i

Fed. R. App. P. 28(a)(8)(A) ...........................................................15,28

Fed. R. App. P. 32(a)(5) .......................................................................49

Fed. R. App. P. 32(a)(6) .......................................................................49

Fed. R. App. P. 32(a)(7)(B) .................................................................49

Fed. R. App. P. 32(f) ............................................................................49

Fed. R. Civ. P. 56(c) ............................................................................12

SDCL 20-13 ...........................................................................................1

Appellate Case: 25-2881    Page: 9    Date Filed: 01/20/2026 Entry ID: 5598399

# JURISDICTIONAL STATEMENT

Tobacco brought race discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and SDCL 20-13, *et seq.* The United States District Court of South Dakota for the Western Division had subject matter jurisdiction over the Title VII claim under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367.

A final judgment disposing of both Tobacco's claims was entered on September 3, 2025, and the notice of appeal was timely filed on September 22, 2025. This Appeals Court has jurisdiction over a final judgment from a United States District Court under 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

I. **To Survive a Motion for Summary Judgment for Racial Discrimination (RIF Termination), the Plaintiff Must Show Evidence that Race was a Factor in her Termination. The District Court Held that Tobacco did not make such a showing. Should the Decision be Affirmed?**

- *Herrero v. St. Louis Univ. Hosp.*, 109 F.3d 481 (8th Cir. 1997)
- *Beasley v. Warren Unilube, Inc.*, 933 F.3d 932 (8th Cir. 2019)
- *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899 (8th Cir. 2015)
- *Habib v. NationsBank*, 279 F.3d 563 (8th Cir. 2001)

II. **To Survive a Motion for Summary Judgment for Racial Discrimination (RIF Termination), the Plaintiff Must Show Pretext After the Employer has Demonstrated a Legitimate, Non-Discriminatory Termination reason (RIF). The District Court Held that Tobacco did not make such a Showing. Should the Decision be Affirmed?**

- *Ahmed v. Am. Red Cross*, 218 F.3d 932 (8th Cir. 2000)
- *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605 (8th Cir. 2014)

1

- *Henderson v. Ford Motor Co.,* 403 F.3d 1026 (8th Cir. 2005)
- *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771 (8th Cir.1995)

**III.** **To Survive a Motion for Summary Judgment for General Racial Discrimination, the Plaintiff Must show an Adverse Action and Circumstances Giving Rise to Discrimination and Pretext after the Employer demonstrates a Legitimate, Non-Discriminatory Reason for its Actions. The District Court Held that Tobacco did not make such a showing. Should the Decision be Affirmed?**

- *Grant v. City of Blytheville, Arkansas*, 841 F.3d 767 (8th Cir. 2016)
- *Chay-Velasquez v. Ashcroft*, 367 F.3d 751 (8th Cir. 2004)
- *Alexander v. Pathfinder, Inc.*, 189 F.3d 735 (8th Cir. 1999)
- *Clark v. Runyon*, 218 F.3d 915 (8th Cir. 2000)

## STATEMENT OF THE CASE

### A. ARI and Tobacco.

ARI is a research institute within Avera McKennan that was started in 2017. App. at 52; R. Doc. 22-3, at 2; Elliott Depo. at 7:22-25, 8:1-12; App. at 41; R. Doc. 22-2, at 3; Frederick Depo. at 20:4-12.[1] During the relevant time period, ARI had approximately 60 employees and had an office at three locations – Sioux Falls, Rapid City, and Pine Ridge. App. at 40; R. Doc. 22-2, at 2; Frederick Depo. at 14:6-21, 15:2-4. ARI is largely grant funded. App. at 43-44; R. Doc. 22-2, at 5-6; Frederick Depo. at 28:24-25, 29:1-19; App. at 30-31; Doc. 22-1 at 2-3; Hockett

---

[1] The following citations are used: To  the District Court: "R. Doc."; to the Joint Appendix: "App."; to Appellant's Addendum: "Add."; and to deposition transcripts: The deponent's last name with reference to the page number(s) and line(s).

2

Depo. at 19:19-25, 20:1). For instance, wages paying almost all the ARI employees are 100 percent grant funded. App. at 37; R. Doc.22-1, at 9; Hockett Depo. at 106:17-25. The only positions at ARI that are materially internally (non-grant) funded are leadership positions, of which there are very few. *Id*.

In December of 2017, Tobacco was hired by ARI as a Clinical Research Manager to work primarily in Pine Ridge. App. at 3; R. Doc. 1, at 3. Tobacco is Native American. App. 2; R. Doc. 1, at 2. ARI's Chief Clinical Research Officer, Dr. Amy Elliott, PhD, who had elsewhere worked with Tobacco for five years, hired Tobacco because of her background in research and grants and her community connections.  App. at 53-54; R. Doc. 22-3, at 3-4; Elliott Depo. at 14:24-25, 15:1-25, 16:1-25, 17:1-10; App. at 3; R. Doc. 1, at 3. During her ARI employment, Tobacco was in one of three similar manager positions (the other two were in Rapid City and Sioux Falls, respectively). App. at 37; R. Doc. 22-1, at 9; Hockett Depo. at 107:4-6; App. at 56, 66-67; R. Doc. 22-3, at 6, 16-17; Elliott Depo. at 30:12-23, 133:3-7, 138:1-16. In her role as manager of ARI's Pine Ridge location, it was important for Tobacco to have community connections to perform the grant funded work and to apply for grants. App. at 57; R. Doc. 22-3, at 7; Elliott Depo. at 35:12-25, 36:1-8.

Drastic differences existed between Pine Ridge and the other offices.  As to Pine Ridge, most of Tobacco's salary at ARI was paid for by internal (non-grant)

3

money, Tobacco only supervised 1 employee, there were very few projects occurring, there was not much grant funding left to support it, and no new grants were expected to be awarded and coming in. App. at 33; R. Doc. 22-1, at 5; Hockett Depo. at 58:22-25, 59:1-3; App. at 56, 67; R. Doc. 22-3, at 6, 17; Elliott Depo. at 30:12-23, 138:1-16. In contrast, in Sioux Falls and Rapid City, the other two manager positions were primarily paid for by grant funds, they each supervised over 20 employees, and there was a lot of grant money coming in and new awards supporting them. App. at 34; R. Doc. 22-1, at 7; Hockett Depo. at 98:25, 99:1-11; App. at 67; R. Doc. 22-3, at 17; Elliott Depo. at 138:1-16; App. at 472; R. Doc. 32-33, at 3; App. at 521-22; R. Doc. 37, at 1-2.

## B. The SYNCH Project.

"SYNCH" was an ARI research project that was being conducted at ARI's Rapid City and Pine Ridge locations. App. at 60; R. Doc. 22-3, at 10; Elliott Depo. at 73:18-19. Tobacco and Paul Forney, who was full-time and the only ARI employee whom Tobacco supervised, had historically been working on SYNCH at the Pine Ridge location. App. at 55-56; R. Doc. 22-3, at 5-6; Elliott Depo. at 26:23-25, 27:1-12, 30:12-23. In 2021 and 2022, Rebecca Andrews ("Andrews") was the lead of SYNCH at ARI's Rapid City location in addition to her working on numerous other projects and supervising over 20 employees, including part-time employees Nick Palko and Kiley Medler, who were assigned to SYNCH and other

4

projects. App. at 34; R. Doc. 22-1, at 7; Hockett Depo. at 98:25, 99:1-11; App. at 64-65, 67; R. Doc. 22-3, at 14-15, 17; Elliott Depo. at 126:12-15, 131:25, 132:1-5, 138:1-16; App. at 517; R. Doc. 36-6, at 10; Elliott Depo. at 121:21-25, 122:1-3; App. at 472; R. Doc. 32-33, at 3; App. at 521-22; R. Doc. 37, 1-2.

In early 2022, Dr. Arielle Deutsch, the principal investigator for SYNCH, and Dr. Elliott decided to have full-time employees Tobacco and Forney assist with SYNCH work that needed to be completed in Rapid City. App. at 49, 50; R. Doc. 22-2, at 11-12; Frederick Depo. at 109:4-25, 110:1-8, 122:14-25, 123:1-17; App. at 67; R. Doc. 22-3, at 17; Elliott Depo. at 138:1-16. This was because there was not much left to do on SYNCH in Pine Ridge, while there was much more to be done in Rapid City. *Id.* To try to redistribute the work to better align with the projects that ARI had, Andrews was removed as the lead of SYNCH at ARI's Rapid City location, and Tobacco was assigned to it there. App. at 35, 38; R. Doc. 22-1 at 7, 10; Hockett Depo. at 98:25, 99:1-11, 109:4-25, 110:1-8. Tobacco's role was not as a dictator, but instead was to implement a team approach where she got input and worked as a team to determine how best to do things. App. at 64; R. Doc. 22-3, at 14; Elliott Depo. at 127:20-25, 128:1-5. Furthermore, Dr. Deutsch, as the principal investigator, was ultimately responsible for making decisions relative to SYNCH, not Tobacco. *Id.*

While Andrews remained Palko's and Medler's direct supervisor, they were

Appellate Case: 25-2881    Page: 14    Date Filed: 01/20/2026 Entry ID: 5598399

directed to provide work hours on SYNCH to help Tobacco. App. at 64-67; R. Doc. 22-3, at 14-17; Elliott Depo. at 126:12-15, 131:25, 132:1-4, 133:8-18, 137:5-11; App. at 49; R. Doc. 22-2, at 11; Frederick Depo. at 111:2-14. Tobacco told them to do door-to-door recruitment in Rapid City to find participants for SYNCH as she had done in Pine Ridge. App. 38; R. Doc. 22-1, at 10; Hockett Depo. at 110:13-23. However, due to recent events in Rapid City, such as shootings, stabbings, and a lot of violence, they were concerned about their safety and found door-to-door in Rapid City ineffective.[2] App. at 38; R. Doc. 22-1, at 10; Hockett Depo. at 110:13-25, 111:1-23; App. at 72-73; R. Doc. 22-4, at 4-5; Deutsch Depo. at 64:2-25, 65:1-11. When Tobacco dismissed their safety concerns, they appropriately went to their direct supervisor, Andrews, regarding this issue. App. at 49; R. Doc. 22-1, at 11; Frederick Depo. at 111:2-14; App. at 66-67; R. Doc. 11-3, at 16-17; Elliott Depo. at 133:3-18, 137:5-11. After this issue was brought to Dr. Deutsch, she discussed the matter with the group (Tobacco, Palko, Medler, Forney, and Andrews) to better understand the best strategies, evaluate what needed to happen and determine how to be most effective with recruiting project participants. App. at 72-73; R. Doc. 22-4, at 4-5; Deutsch Depo. at 64:2-25, 65:1-25, 66:1-15. Thereafter, Dr. Deutsch concluded that in Rapid City, door-to-door recruitment

---

[2] The Rapid City SYNCH work was primarily in need of recruiting Caucasian males. App. at 65; R. Doc. 22-3, at 15; Elliott Depo. at 131:10-24.

Appellate Case: 25-2881    Page: 15    Date Filed: 01/20/2026 Entry ID: 5598399

was not an appropriate recruiting tool due to many factors, including it being inefficient and risking safety. App. at 72-73; R. Doc. 22-4, at 4-5; Deutsch Depo. at 64:2-25, 65:1-25, 66:1-15. As the principal investigator on SYNCH, this was her decision to make, not Tobacco's. App. at 64; R. Doc. 22-3, at 14; Elliott Depo. at 127:20-25, 128:1-5.

## C. The RIF and Tobacco's Termination.

Prior to June 2022, in the wake of the COVID-19 pandemic, Avera McKennan needed to make budget cuts, and its CEO directed department leaders to reduce their budgets by 5% or increase their revenues by 5%. App. at 42-43; R. Doc. 22-2, at 4-5; Frederick Depo. at 23:19-25, 24:1-17, 28:4-16; App. at 79; R. Doc. 23, at 1; App. at 521-22; R. Doc. 37, at 1-2. The directive caused a Reduction in Force (RIF), resulting in the termination of hundreds of employees, 95% of whom were Caucasian. App. at 79; R. Doc. 23, at 1.

As to ARI, Dr. Elliott, as the department leader, was required to comply with the directive, yet its operations were different as the grant funding had protection as to cuts because it was not Avera money, and as increasing funding was not feasible since grant applications and awards took significant time to obtain.[3] App.

---

[3] While the RIFs were occurring, Avera still had to continue to hire some employees, such as nurses. App. at 63; R. Doc. 22-3, at 13; Elliott Depo. at 115:6-11. Additionally, ARI was able to hire positions that were 100% grant funded, all such positions were not leadership positions, and for work that did not involve Pine Ridge. App. at 61, 63; R. Doc. 22-3, at 11, 13; Elliott Depo. at 91:1-21, 116:12-15;

7

at 52, 56, 62-63; R. Doc. 22-3, at 2, 6, 12-13; Elliott Depo. at 8:13-15, 31:5-8, 109:19-25, 110:1-11, 114:1-5; App. at 31; R. Doc. 22-1, at 4; Hockett Depo. at 25:7-23; App. at 521-22; R. Doc. 37, at 1-2. Therefore, the only viable option was for Dr. Elliott to reduce ARI's non-grant-funded budget. App. at 521-22; R. Doc. 37, at 1-2. To comply, Dr. Elliott considered factors including the active projects going on, what type of funding helps support those projects, how much of that funding was grant funding versus internal money, and what projects ARI had coming up. App. at 56; R. Doc. 22-3, at 6; Elliott Depo. at 31:16-25, 32:1-6. Additionally, she considered the funding, workload, and need for each position. App. at 63; R. Doc. 22-3, at 13; Elliott Depo. at 116:16-22. Regarding managers, Dr. Elliott also considered how many employees they were supervising and how many studies they were supporting at that time. App. at 56; R. Doc. 22-3, at 6; Elliott Depo. at 31:16-25, 32:1-6.

Ultimately, Dr. Elliott decided that Tobacco's position needed to be cut because: (1) her position was largely funded from internal money, whereas the other two managers were primarily grant funded; (2) she was only supervising 1 individual at the Pine Ridge location, whereas the other managers were each supervising over 20 employees; (3) there were not a lot of research studies

---

App. at 33, 36; R. Doc. 22-1, at 5, 8; Hockett Depo. at 56:7-23, 100:16-22; App. at 45-47; R. Doc. 22-2, at 7-9; Frederick Depo. at 40:24-25, 41:1-19, 75:16-26, 76:1.

8

happening at ARI's Pine Ridge location at that time; (4) there was not a pipeline for upcoming studies and grant funding at ARI's Pine Ridge location; (5) there were a multitude of projects and activities happening at the other ARI locations; and (6) a manager was not needed at the Pine Ridge location. App. at 67; R. Doc. 22-3, at 17; Elliott Depo. at 138:1-16.

On June 29, 2022, Dr. Elliott recommended the cut; it was approved. App. at 67; R. Doc. 22-3, at 17; Elliott Depo. at 137:12-18. On July 5, 2024, Tobacco was then terminated from her position as part of the RIF. App. at 68; R. Doc. 22-3, at 18; Elliott Depo. at 141:16-18.

After making the decision to cut the position, Dr. Elliott, with the assistance of Human Resources, Teresa Frederick, considered the RIF process. Ultimately, Tobacco was not offered another position within ARI as there were no other ARI manager positions open, all other general open positions were in Rapid City or Sioux Falls, and would have been a demotion in terms of the position and salary. App. at 58-59, 67; R. Doc. 22-3, at 8-9, 17; Elliott Depo. at 60:24-25, 61:1-12, 138:24-25, 139:1-9; App. at 47; R. Doc. 22-2, at 9; Frederick Depo. at 75:16-25, 76:1-5. Further, if demoted then Tobacco would not have received the RIF severance pay. *Id.* Instead of offering Tobacco a demotion in a different town than where Tobacco had lived her entire life, Dr. Elliott decided to provide her the full severance package (10 weeks), and she was told that there were open positions

9

within Avera McKennan for which she could apply. App. at 61; R. Doc, 22-3, at 11; Elliott Depo. at 92:12-21; App. at 48; R. Doc. 22-2, at 10; Frederick Depo. at 77:12-25, 78:1-14.

**D. Tobacco's Discrimination Lawsuit and Appeal.**

On May 22, 2023, Tobacco filed this lawsuit against ARI, claiming race discrimination as to her termination and general employment terms.[4] App. at 1-14; R. Doc. 1, at 1-15. ARI moved for summary judgment. App. at 20-21; R. Doc. 20, at 1-2. The District Court found that under the *McDonnell Douglas* framework, Tobacco did not establish a *prima facie* case of race discrimination because she failed to substantiate her allegations with evidence sufficient to support a finding in her favor. App. at 536-542; R. Doc. 40, at 14-20; Add. at 14-20. The District Court also found that even if she had, she failed to establish that ARI's stated rationale for her termination was pretext for discrimination. App. at 542-546; R. Doc. 40, at 20-24; Add. at 20-24. The District Court additionally found that Tobacco's general discrimination claim failed because she did not establish race discrimination in any terms and conditions of her employment at ARI. App. at 546; R. Doc. 40, at 24; Add. at 24.

---

[4] The parties agree Tobacco's federal and state race claims are appropriately analyzed under the same Title VII and Rule 56 standards. *See Axness v. Aqreva LLC*, 118 F. Supp. 3d 1144, 1157 (D.S.D. 2015) (recognizing that South Dakota courts examine claims brought under the SDHRA under a standard identical to that applied to Title VII claims); *see also* Appellant's Brief at 1, fn. 1.

Appellate Case: 25-2881     Page: 19     Date Filed: 01/20/2026 Entry ID: 5598399

Tobacco thereafter filed a Notice of Appeal. App. at 549-440; R. Doc. 43, at 1-2. She asserts as to the RIF, she established her *prima facie* case and pretext. Appellant's Brief at 26-39. As to her general discrimination claim, she argues that she established that the terms and conditions of her employment at ARI were discriminatory. Appellant's Brief at 24-26. Tobacco has not established any of this, and the appeal fails.

## SUMMARY OF THE ARGUMENT

None of Tobacco's arguments support a reversal of the District Court's dismissal of her claims. As found by the District Court and herein established, other than her self-serving allegations and speculation, which are properly ignored, Tobacco fails to set forth evidence establishing a *prima facie* case of discrimination (in the RIF context) regarding her termination from ARI because she has no evidence that her race was a factor in her termination. Even when assuming, *arguendo,* that she did, ARI had a legitimate, nondiscriminatory reason for terminating Tobacco's employment – the RIF – and Tobacco has failed to show that the RIF was a mere pretext for discrimination. Therefore, Tobacco's discrimination regarding her termination from ARI must fail.

Like her termination discrimination claim, Tobacco's race discrimination claim as to the terms and conditions of her employment occurring before her

11

termination suffers from the same fatal flaws. As a result, this discrimination claim also fails.

## ARGUMENT

### I.   Standard of Review.

This Court reviews *de novo* the District Court's granting of a motion for summary judgment, "applying the same summary judgment standard as the district court and considering whether the district court properly followed the substantive law." *Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.*, 387 F.3d 705, 710 (8th Cir. 2004) (citations omitted). A party is entitled to summary judgment when "the pleadings, the discovery, and the disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The nonmoving party is entitled to all reasonable inferences that may be drawn from the evidence, but not to inferences that may only be drawn by resorting to speculation." *Culton v. Missouri Dep't of Corr.*, 515 F.3d 828, 830 (8th Cir. 2008) (quotation omitted).

"A party opposing summary judgment may not rest upon mere allegations or denials contained in the pleadings, but must, by sworn affidavits and other evidence, set forth specific facts showing that there is a genuine issue for trial." *Bailey v. U.S. Postal Serv.*, 208 F.3d 652, 654 (8th Cir. 2000) (citation omitted). "Summary judgment procedure is properly regarded not as a disfavored procedural

12

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Emps. Mut. Cas. Co. v. Wendland & Utz, Ltd.*, 351 F.3d 890, 893 (8th Cir. 2003) (citations omitted and cleaned up).

When a motion for summary judgment is filed, a court must grant summary judgment if the "movant 'shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *United States v. Meyer*, 914 F.3d 592, 594 (8th Cir. 2019). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of her case on which he bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

Conclusory allegations and speculation are insufficient to defeat summary judgment. *Bloom v. Metro Heart Grp. of St. Louis, Inc.*, 440 F.3d 1025, 1028 (8th Cir. 2006). "Moreover, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 1028-29 (citation omitted and cleaned up) (emphasis in original). The nonmoving party must demonstrate a genuine issue of material fact, that is a dispute that might

13

"affect the outcome of the suit under the governing law," so that "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

## II. Tobacco Has Failed to Establish a *Prima Facie* Case for Discrimination as to her Termination.

Because Tobacco cannot produce direct evidence of discrimination, Tobacco's claims are appropriately analyzed under the *McDonnell Douglas* burden-shifting framework.[5] *Grant v. City of Blytheville, Arkansas*, 841 F.3d 767, 773 (8th Cir. 2016). Under this framework, "if an employee carries [her] burden of establishing a *prima facie* case of discrimination, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action." *Id.* (citation omitted). "If the employer meets this burden of production, the employee must then 'prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were pretext for discrimination.'" *Id.* (citation omitted). Tobacco has the burden of persuasion at all times. *See Davis v. KARK-TV, Inc.*, 421 F.3d 699, 704 (8th Cir. 2005) ("The plaintiff has the burden of persuasion at all times.").

---

[5] Tobacco neither argued to this nor the District Court that she can produce direct evidence of discrimination. *See generally* Appellant's Brief; R. Doc. 29, at 11. Therefore, any argument by Tobacco that she can produce direct evidence of discrimination was not preserved for appeal. *See Alexander v. Pathfinder, Inc.*, 189 F.3d 735, 742 (8th Cir. 1999) ("[W]e will not consider arguments raised for the first time on appeal."); *see also Fleck v. Wetch*, 937 F.3d 1112, 1116 (8th Cir. 2019) (recognizing an inherent injustice arises and the lack of a record to evaluate arguments where not raised below).

14

To establish a *prima facie* case of discrimination in the RIF context under Title VII, Tobacco "must: (1) show that she was within the protected age, racial, or ethnic group; (2) show that she met applicable job qualifications; (3) show that she was discharged; and (4) produce some additional evidence that a prohibited criterion such as age, race, or ethnic origin was a factor in her termination." *Herrero v. St. Louis Univ. Hosp.*, 109 F.3d 481, 483–84 (8th Cir. 1997).

Here, Tobacco argues prong four exists due to comparators, policy deviation, and the general work environment. Her arguments are unsuccessful as not only do they solely rely on improper self-serving allegations, conjecture, or speculation, but they are also insufficient as the allegations are not material and not factually accurate.[6]

    1. <u>Alleged comparative evidence is insufficient.</u>

Tobacco first asserts that "comparator evidence is a well-recognized means of supporting an inference of discrimination." Appellant's Brief at 27. Her

---

[6] Despite being expressly required by Fed. R. App. P. 28(a)(8)(A), the factual allegations Tobacco relies upon in the argument section of her briefing do not cite to the record. *See* Appellant's Brief at 21-39. Instead, Tobacco thrusts the burden on ARI and the Court to figure out if any of these asserted facts are supported by the record. Tobacco's motivation for doing this is not hard to decipher – make it unnecessarily difficult for the Court to determine if these asserted facts are supported by the evidence and, in turn, unnecessarily difficult to analyze whether there is a genuine issue of material fact. This is especially troublesome when many of these asserted facts are misleading and draw inferences from the evidence that could only be drawn by resorting to speculation.

15

argument should be rejected. First, the case on which she relies (*Ebersole v. Novo Nordisk, Inc.*) makes clear that comparative evidence is usually reserved for an employee who is trying to demonstrate pretext. 758 F.3d 917, 925 (8th Cir. 2014). Second, Tobacco's comparator evidence was not raised at the District Court, so it should not be considered. [7] *See generally,* R. Doc. 29; *See also Alexander*, *supra*, at 742; *Fleck*, *supra*, at 1116.

Third, the comparator evidence is unavailing. In discussing pretext, this Court has long held that the comparator must involve a similarly-situated employee being treated in a different, non-discriminatory manner. *See, e.g.*, *Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 938 (8th Cir. 2019). This test is "rigorous." *Id.* "The plaintiff must establish that he and the employees outside of his protected group were similarly situated in all relevant respects." *Id.* "This means that the plaintiff and the potential comparators must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.*

Here, there are no similarly-situated employees. In her argument, Tobacco seems to reference Teresa Frederick; however, Frederick was a Human Resources partner who did not have the same supervisor or work duties. Appellant's Brief at

---

[7] Tellingly, the District Court stated,"[n]otably, Tobacco does not allege that any similarly situated employee not in her protected class was treated differently." App. at 546; R. Doc. 40, at 24; Add. at 26.

16

27-28; App. at 79; R. Doc. 23, at 1; App. at 40; R. Doc. 22-2, at 2; Frederick Depo. at 15:6-25, 16:1-17. She then references Andrews. Appellant's Brief at 27-28. Andrews, however, was not similarly situated. Tobacco only supervised 1 employee, had very few projects in her territory (Pine Ridge), and her salary was funded by internal money (not third-party grant money), for which there was no pipeline for upcoming funding. App. at 56, 67; R. Doc. 22-3, at 6, 17; Elliott Depo. at 31:16-25, 21:1-6, 138:1-16. In contrast, Andrews supervised over 20 employees, was involved in numerous projects, her salary was grant funded, and there was a pipeline of guaranteed future funding. App. at 35; R. Doc. 22-1, at 7; Hockett Depo. at 98:25, 99:1-11; App. at 67; R. Doc. 22-3, at 17; Elliott Depo. at 138:1-16; App. at 472; R. Doc. 32-33, at 3; App. at 521-22; R. Doc. 37, at 1-2. It is clear that Andrews and Frederick cannot be used to pass the rigorous test of being similarly situated in all relevant respects to be used as comparison.

While no further analysis between Andrews and Tobacco need be had as they were not similarly situated, even doing so through analysis of different treatment issues shows rejection of comparators is appropriate as the conduct lacks the "without any mitigating or distinguishing circumstances" that is required to be demonstrated by Tobacco. Here, Tobacco references meeting exclusion and support to manage (tokenization) and then mischaracterizes the evidence and draws unreasonable inferences from the evidence by resorting to speculation.

17

Appellant's Brief at 27-28.

For instance, Tobacco alleges that she, unlike Andrews, was excluded from ARI administration meetings due to her race. Appellant's Brief at 27. Outside of Tobacco's self-serving allegations and speculation, this allegation is unsupported. The reality is that beginning around mid-2021, the ARI administration meetings were largely focused on the ECHO project, which was not being conducted in Pine Ridge and in which Tobacco had no involvement. App. at 62-63; R. Doc. 22-3, at 12-13; Elliott Depo. at 112:19-25, 113:1-8. As a result (and one year before she was terminated), Tobacco stopped attending the ARI administration meetings, so she did not have to sit and listen to discussions about a project that she and her site were not involved in. *Id.* Further, the fact that other managers participated in the ARI administration meetings and would have thereby been aware of the RIF is immaterial because there is no evidence to support that any of these managers were involved with ARI's decision to terminate Tobacco as part of the RIF; that was solely Dr. Elliott's decision to make and she testified she did not involve the other managers in her decision process. App. at 56; R. Doc. 22-3, at 6; Elliott Depo. at 31:5-8. Thus, this allegation is immaterial and appropriately ignored. *See Smith v. International Paper Co.,* 523 F.3d 845, 848-49 (8th Cir. 2008) (granting summary judgment in favor of the employer and stating that a plaintiff must do more than point to "self-serving allegations"); *see also Habib v. NationsBank*, 279 F.3d 563,

18

567 (8th Cir. 2001) (granting summary judgment in favor of an employer in a discrimination case because the employee was unable to "substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy") (citations omitted).

Tobacco next argues that she received disparate treatment compared to Andrews in the support she received and the authority she was allowed to exercise as a manager, specifically related to her SYNCH door-to-door recruitment idea. Appellant's Brief at 27-28. Once again, the factual underpinnings of this alleged disparate treatment are based on mischaracterizing the evidence and by drawing unreasonable inferences from the evidence.

ARI does not dispute that Tobacco wanted Palko and Medler to do door-to-door recruitment in Rapid City to find participants for SYNCH, as she did in Pine Ridge. App. at 38; R. Doc. 22-1, at 10; Hockett Depo. at 110:13-23, 111:1-9. However, it is undisputed that due to recent events in Rapid City, such as shootings, stabbings, and violence, Palko and Medler did not want to do it as they were concerned for their safety and found it ineffective in Rapid City.[8] App. at 38; R. Doc. 22-1, at 10; Hockett Depo. at 110:13-25, 111:1-23. It is also undisputed

---

[8] The Rapid City SYNCH work was primarily in need of recruiting Caucasian males. App. at 65; R. Doc. 22-3, at 15; Elliott Depo. at 131:10-24.

19

Appellate Case: 25-2881   Page: 28   Date Filed: 01/20/2026 Entry ID: 5598399

that at all times, Andrews was still Palko's and Medler's direct supervisor and that Tobacco, even when a project lead, was not a dictator but instead was to implement a team approach, getting input from and working as a team with the others to get the work done. App. at 49; R. Doc. 22-2, at 11; Frederick Depo. at 111:2-14; App. at 64; R. Doc. 22-3, at 14; Elliott Depo. at 127:20-25, 128:1-5, 137:5-11. Furthermore, Dr. Deutsch, as the SYNCH principal investigator (and not Tobacco), was ultimately responsible for making decisions regarding SYNCH. App. at 64; R. Doc. 22-3, at 14; Elliott Depo. at 127:20-25, 128:1-5.

Consequently, when Tobacco dismissed their safety recruiting concerns, Palko and Medler appropriately went to their direct supervisor, Andrews. App. at 49; R. Doc. 22-2, at 11; Frederick Depo. at 111:2-14; App. at 66-67; R. Doc. 22-3, at 16-17; Elliott Depo. at 133:8-18, 137:5-11. *After* this issue was brought to Dr. Deutsch, she discussed it with the group to better understand and gather input. App. at 72-72; R. Doc. 22-4, at 4-5; Deutsch Depo. at 64:2-25, 65:1-25, 66:1-15. *After* these discussions, Dr. Deutsch concluded that door-to-door recruitment was not the appropriate recruiting tool in Rapid City. *Id.* This was her decision to make, not Tobacco's. App. at 64; R. Doc. 22-3, at 14; Elliott Depo. at 127:20-25, 128:1-5. There is no evidence to support Tobacco's conclusion that there was a massive conspiracy by Palko and Medler and, in turn, by Andrews and Dr. Deutsch to undermine Tobacco's instruction to Palko and Medler due to Tobacco's race.

20

Tobacco's speculation is insufficient, immaterial, and not factually supported, and, in turn, is appropriately ignored when considering ARI's motion.[9] *See Smith, supra*, at 848-49; *Habib, supra*, at 567.

### 2. ARI's alleged policy deviations are insufficient.

Tobacco's next argument as to race being a factor in her termination involves decisions made by Dr. Elliott regarding ARI'S RIF policy and Avera's general discrimination policy. Appellant's Brief at 29-30. This argument also fails.

As to this issue, Tobacco first asserts that Dr. Elliott did not consider all the criteria she was supposed to consider to meet the funding reduction or increase. Appellant's Brief at 30. Tobacco's argument is misguided. Notably, there were no set criteria for the directive. Moreover, due to ARI's structure, the *only* option Dr. Elliott had was to reduce ARI's internal budget by 5%, and it could not readily obtain grant funding to increase revenue.[10] App. at 52, 56, 62-63; R. Doc. 22-3, at

---

[9] Tobacco now also alleges that the entire SYNCH project was paused. Appellant's Brief at 28. There is no evidence supporting this claim; rather, it is simply Tobacco's self-serving allegations which should be ignored. *See Smith, supra,* at 848-49. In reality, Palko's and Medler's direct supervisor, Andrews, told them they could briefly pause doing door-to-door recruitment until she looked at the concerns they raised. App. at 503; R. Doc. 36-5, at 2; Palko Depo. at 26:9-13; App. at 49; R. Doc. 22-2, at 11; Frederick Depo. at 111:2-14; App. at 67, R. Doc. 22-3, at 17; Elliott Depo. at 137:5-11.

[10] Although unrelated to ARI not following policies, Tobacco asserts that Dr. Elliott did not perform a specific budget calculation to ensure she was meeting the 5% internal budget reduction, which Tobacco alleges is evidence of discrimination. Appellant's Brief at 30. It is not. Rather, Dr. Elliott explained she was generally

Appellate Case: 25-2881    Page: 30    Date Filed: 01/20/2026 Entry ID: 5598399

2, 6, 12-13; Elliott Depo. at 8:13-15, 31:5-8, 109:19-25, 110:1-11, 114:1-5; App. at 31; R. Doc. 22-1, at 4; Hockett Depo. at 25:7-23; App. at 52-22; R. Doc. 37, at 1-2. Dr. Elliott then determined her only option to sufficiently reduce internal funding was to cut the Pine Ridge position for the six reasons previously delineated. *See supra*, at pages 7-9; App. at 56; R. Doc. at 22-3, at 6; Elliott Depo. at 31:16-25, 32:1-6; App. at 521-22; R. Doc. 37, at 1-2. Any RIF policy considerations were not germane.

Regardless, the RIF policy expressly states, "Avera reserves the right to reduce the staff to best suit department and patient/resident needs." App. at 339; R. Doc. 32-11, at 15. The law is clear that "An employer can certainly choose how to

---

aware of where ARI's internal dollars are allocated, as she regularly looked at ARI's funding as part of her job duties. App. at 521; R. Doc. 37, at 1. She knew without having to perform any specific budget calculation that eliminating Tobacco's position would substantially decrease ARI's internal budget, so no specific calculation was needed. App. at 521; R. Doc. 37, at 1-2. Even Dr. Elliott's supervisor (Ryan Hansen), knew that: (1) Dr. Elliott was looking at ARI's internal funding; (2) Tobacco's position was one of the few positions at ARI largely funded off internal funding; (3) Tobacco only supervised 1 person while the other ARI managers supervised over 20 persons each; and (4) Tobacco's manager position was not needed based on workload. App. at 67; R. Doc. 22-3, at 17; Elliott Depo. at 138:1-16. Presented with her recommendation, Hansen approved it and told her she had sufficiently complied with the directive. App. at 61, 67; R. Doc. 22-3, at 11, 17; Elliott Depo. at 90:2-7, 138:1-16. Tobacco has also produced no evidence of any other similarly situated ARI employee who was not in a protected class being treated differently. Therefore, Dr. Elliott not doing a specific budget calculation to ensure she was meeting the 5% is not evidence of discrimination. *See further* App. at 545; R. Doc. 40, at 23; Add. at 25 (District Court recognizing this failure).

Appellate Case: 25-2881     Page: 31     Date Filed: 01/20/2026 Entry ID: 5598399

run its business, including not to follow its own personnel policies regarding termination of an employee or handling claims of discrimination, as long as it does not unlawfully discriminate in doing so." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 904 (8th Cir. 2015) (cleaned up). Furthermore, there is not even evidence to support that Dr. Elliott did not consider all the criteria she was supposed to consider under the RIF policy, as she testified she considered that which was relevant to ARI. App. at 56, 63; R. Doc. 22-3, at 6, 13; Elliott Depo. at 31:16-25, 32:1-6, 116:16-22. Tobacco's speculation and conjecture are not sufficient. Allegations as to following the RIF policy in this regard do not support that Tobacco's race was a factor in her termination.

Tobacco then argues that ARI did not follow the RIF policy when terminating her because she was terminated rather than being offered a transfer to another position within ARI. Appellant's Brief at 30. Any tie to race is nothing more than conjecture. Moreover as explained above, rather than offering Tobacco a significant demotion in a city where she would have to move from where she lived her entire life, Dr. Elliott instead provided Tobacco with the full severance package, and Tobacco was told that there were open positions within Avera McKennan for which she could apply. App. at 61; R. Doc. 22-3, at 11; Elliott Depo. at 92:12-21; App. at 48; R. Doc. 22-2, at 10; Frederick Depo. at 77:12-25, 78:1-14. There is no evidence supporting that Dr. Elliott made this decision so she

23

could unlawfully discriminate against Tobacco. *See Schaffhauser, supra*, at 904. Dr. Elliott's decision does not establish that the handling of Tobacco's matter was due to her race, especially when considering this process was used for all similarly-situated employees involved in the RIF, regardless of their race, where nearly 150 Caucasian employees were terminated. App. at 48; R. Doc. 22-2, at 10; Frederick Depo. at 79:14-25, 80:1-13; App. at 79; R. Doc. 23, at 1.

Tobacco then argues that race evidence is demonstrated because ARI did not offer her transition services under the RIF policy. Appellant's Brief at 30. Not only is there no tie to race, but it is also patently inaccurate and unsupported. For instance, the involved Human Resource partner, Frederick, testified that Tobacco: (1) was marked as eligible for rehire within the severance package; (2) was told there were other open positions within Avera McKennan to which she could apply; (3) was provided with a packet of telephone numbers to contact the transition team; (4) went through the packet where she was told about the transition team; and (5) was given the website information to look at system job opportunities. App. at 48; R. Doc. 22-2, at 10; Frederick Depo. at 77:12-25, 78:1-14; App. at 79; R. Doc. 23, at 1. Tobacco simply never reached out to the transition team and sought transition services.

Lastly, Tobacco alleged "some evidence" that race was a termination factor by making reference to ARI's discrimination policies and alleged failures.

24

Appellant's Brief at 29-30. She alleges she complained of discrimination during a conversation with Dr. Deutsch, but that Dr. Deutsch failed to report it. *Id.* at 29. This case is not a retaliation lawsuit (as the Complaint makes clear). Tobacco cannot now create such a claim. Notwithstanding, Dr. Deutsch testified that her interpretation of this conversation was Tobacco was discussing discrimination in the context of the research they were conducting at ARI, not in the context of making a complaint based on being discriminated against. App. at 497; R. Doc. 36-3, at 4; Deutsch Depo. at 47:6-25, 48:1-18. Regardless, Dr. Deutsch's alleged misinterpretation and any alleged failure to report are immaterial in determining whether Tobacco's termination from ARI was motivated by her race. Therefore, Tobacco's allegation that Dr. Deutsch failed to report her claim of discrimination is immaterial and properly ignored.

As to the general discrimination policy, Tobacco also argues that Frederick did not legitimately investigate her complaints regarding the issues she was experiencing (Palko and Medley not following her recruitment directive and her alleged loss of authority over SYNCH ), which she claims shows race discrimination. Appellant's Brief at 29-30. Once again, Tobacco's argument is without merit. When investigating Tobacco's complaint in this regard, Frederick interviewed Tobacco and concluded that the conduct did not constitute discrimination (or retaliation), thereby following the policy. App. at 434; R. Doc.

25

32-22, at 2. Moreover, in this argument, what Tobacco is obviously trying to do is to claim she was treated unfairly and retaliated against. However, Tobacco has brought a discrimination claim, *not* a retaliation claim. *See* App. at 1-14; R. Doc. 1, at 1-14. Tobacco cannot bootstrap her discrimination claims to allegations that amount to a retaliation claim when she has not brought a retaliation claim.[11] Therefore, Tobacco's factual allegations alleging discrimination due to reporting or opposing racial discrimination are immaterial to and properly ignored.[12]

    3.  <u>References to ARI's workplace environment are insufficient.</u>

Tobacco's final argument as to prong 4 (race as a factor in the termination) is that ARI's workplace generally shows discrimination based on race.[13]

---

[11] A discrimination claim alleges that someone was treated unfairly because of their protected status, while a retaliation claim alleges that someone was treated unfairly because they opposed discrimination. *Compare* 42 U.S.C. § 2000e-2(a)(1) *with* 42 U.S.C. § 2000e-3(a).

[12] Tobacco alleges that Forney raised concerns to her about being treated unfairly because of his race. Appellant's Brief at 11. There is nothing in the record to support that Tobacco reported these concerns.

[13] Tobacco asserts that courts "routinely consider workplace context, racial dynamics, and identity-based assumptions when evaluating circumstantial evidence of discrimination." Appellant's Brief at 30. She cites *Reeves v. Sanderson Plumbing Prod, Inc.*, 530 U.S. 133, 147-48 (2000) and *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1041-42 (8th Cir. 2010) for this assertion. *Id.* These cases, however, do not squarely support Tobacco's assertion in this regard.  For instance, in the cited portion of *Reeves*, the court analyzed the impact of proving that a defendant's explanation is unworthy of credence. *See Reeves*, 530 U.S. at

26

Appellant's Brief at 30-31. It does not. In support of this argument, Tobacco lists a number of factual allegations that are not material and/or are not factually accurate. *Id.* at 30.

Tobacco first argues that because racism was discussed in the context of the research projects being conducted at ARI, and other employees acknowledged talking about racism in the context of discussing the research projects, such occurrences are somehow evidence that her race was a factor in her termination. Appellant's Brief at 31. It is not. It is undisputed that many of the ARI studies directly studied systematic racism and structural racism. App. at 496; R. Doc. 36-3, at 3; Deutsch Depo. at 41:5-13. Therefore, it is wholly unsurprising that racism was discussed by ARI employees in the context of the research projects being conducted and that employees acknowledged talking about racism in the context of discussing the research projects. There is no evidence to support that these discussions had anything to do with employment issues at ARI, and it does not provide any support that Tobacco's termination was motivated by her race.[14]

---

147-48. Further, as explained below (*see infra*, at pages 30-31, fn. 15) *Lewis* does not lend support to a finding of discrimination in this case.

[14] In this argument, Tobacco mentions the phrase used at work of the "elephant in the room." Appellant's Brief at 12, 31. Yet Tobacco even acknowledges this phrase was used in the context of the race-related research being done within the community. *Id.* Moreover, the evidence simply is that the phrase just acknowledged that ARI studied systematic and structural racism. App. at 496; R.

27

Tobacco next again references her coworker's opinions on the door-to-door recruiting issue. Appellant's Brief at 31. As set forth above, there is no evidence that the employees who did not support that type of recruiting in Rapid City did so due to race. *See supra*, at pages 19-21. She then claims she and Forney were required to do door-to-door recruitment in Rapid City. Appellant's Brief at 31. Yet there is no evidence that either was "forced," rather, they simply chose to do so until Dr. Deutsch halted such conduct. Moreover, as to Forney, if anyone was "forcing" such recruiting, it would have been Tobacco as his direct supervisor, not others. App. at 55, 67; R. Doc. 22-3, at 5, 17; Elliott Depo. at 26:23-25, 27:1-12, 137:5-11.

Regarding Tobacco's allegation that Dr. Deutsch was concerned about the ability to get future studies in Pine Ridge when she heard about Tobacco's termination (Appellant's Brief at 31), it is first noted that since Tobacco fails to cite to the record, such allegation is properly ignored. *See* Fed. R. App. P. 28(a)(8)(A). Regardless, it does not support race discrimination and instead simply reflects a legitimate concern that terminating an employee who has community connections, which are important with grant work there, could negatively affect

---

Doc. 36-3, at 3; Deutsch Depo. at 41:5-13. The phrase is not material and is properly ignored.

Appellate Case: 25-2881     Page: 37     Date Filed: 01/20/2026 Entry ID: 5598399

future grants in that community. App. at 57; R. Doc. 22-3, at 7; Elliott Depo. at 35:12-25, 36:1-8.

Tobacco then turns to unsupported allegations of her and Forney having "inflexible" jobs compared to the ARI Rapid City employees. Appellant's Brief at 31. Unsurprisingly, Tobacco does not actually identify the inflexibility. *See id.* ARI presumes that what Tobacco is referring to is her being directed to do some work in Rapid City, impacting her schedule and causing travel time. Yet as set forth above (*see supra*, at pages 3-5), there were projects in Rapid City and Sioux Falls and not in Pine Ridge due to the lack of grant funded Pine Ridge projects, so having these two employees actually do work (with travel expenses paid for by SYNCH grant funding) rather than sit in Pine Ridge not working does not show race discrimination. App. at 50; R. Doc. 22-2, at 12; Frederick Depo. at 122:14-25, 123:1-17; App. at 67; R. Doc. 22-3, at 17; Elliott Depo. at 138:1-16; App. at 35, 38; R. Doc. 22-1 at 7, 10; Hockett Depo. at 98:25, 99:1-11, 109:4-25, 110:1-2; App. at 522; R. Doc. 37, at 2.

Tobacco's final kitchen-sink work environment argument is what she has referred to as "tokenism." Appellant's Brief at 31-33. Tobacco asserts that she was employed at ARI only as a symbolic gesture to create an appearance of racial employment equality. *Id.* Once again, the facts that Tobacco relies on for this

29

Appellate Case: 25-2881    Page: 38    Date Filed: 01/20/2026 Entry ID: 5598399

argument are either not material, misleading, and/or draw unreasonable inferences from the evidence that could only be drawn by resorting to speculation.

In support of this argument, Tobacco again references the same allegations (being forced to do door-to-door recruiting, having to travel to Rapid City, being excluded from administrative meetings, and Dr. Deutsch's and Andrew's positions on recruiting rather than her desire being adopted). Appellant's Brief at 32-33. As articulated above, Tobacco's speculation and unreasonable inferences are properly ignored, and these allegations do not support race discrimination/tokenism.

While tokenism is not established here, it is also noteworthy that there is no reason for the Court to expressly adopt tokenism as an independent means to establish that an employer racially discriminated against an employee. Instead, the Court certainly already is able to consider such conduct under the existing *McDonnell Douglas* framework. Tellingly, Tobacco fails to cite a single case where a court has held that racial tokenism is an independent means to establish that an employer racially discriminated against an employee. Appellant's Brief at 31-33.[15]

---

[15] Tobacco relies on *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1041-42 (8th Cir. 2010) to argue that this Court should identify racial tokenism as an independent means to establish that an employer racially discriminated against an employee. Appellant's Brief at 32. In *Lewis*, following the United States Supreme Court precedent in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), this Court recognized that an employer discriminating against a woman for failing to meet sex stereotypes is prohibited because the discrimination would not occur but for

Appellate Case: 25-2881    Page: 39    Date Filed: 01/20/2026 Entry ID: 5598399

In sum, Tobacco was terminated by ARI as part of a legitimate RIF, and the alleged discrimination she believes she experienced is not supported by the evidence. Just because Tobacco thinks her race was a factor in her termination and that she was discriminated against during her employment at ARI, does not make it so. Nor does Tobacco's self-serving allegations, speculation, and conjecture. As the District Court properly concluded when rejecting all these arguments, Tobacco failed to substantiate her allegations with required evidence, stating:

> However, it is well settled that to avoid summary judgment, Tobacco must substantiate her allegations with probative evidence. This she has not done. First, besides her conclusory assertions, Tobacco has not presented evidence that her treatment at ARI was due to her race. Rather, she asks this Court to presume that race was a motivating factor behind ARI's decisions because she personally cannot fathom a different reason. Further, while the evidence supports that she conducted door-to-door recruitment when Palko and Melder were excused from doing so, the record is devoid of evidence that she was forced to conduct such type of recruitment because of her race rather than because of her preference for or willingness to do that type of recruiting. Finally, Tobacco's statement to Palko and Medler about feeling tokenized does not state a prima facie case of race discrimination because there is no evidence linking that statement to Tobacco's termination or to her terms and conditions of employment.
>
> Because Tobacco has failed to substantiate her allegations of race discrimination with evidence that would permit a finding in her favor, the Court concludes that she has not established a prima facie case of race discrimination.

---

her sex. *See Lewis*, *supra*, at 1038-42. This case is inconsequential in determining if ARI unlawfully racially discriminated against Tobacco in this case.

31

App. at 541-45; R. Doc. 40, at 19-20; Add. at 21-22.

The District Court's decision was well-reasoned and should be affirmed. Affirmance on this grounds results in no further analysis need be done by this Court.

### III. Tobacco has Failed to Establish Pretext for ARI's Legitimate, Nondiscriminatory Termination Reason.

If this Court, nevertheless, determines that Tobacco has met her *prima facie* burden here, her discrimination claim still fails as Tobacco cannot establish pretext for ARI's legitimate, nondiscriminatory reason for terminating her.

As to the termination decision, Tobacco does not seem to contest that ARI presented a legitimate, nondiscriminatory reason for termination. Notably, a RIF has long been held to meet an employer's burden. *See, e.g., Herrero*, 109 F.3d at 483–86 (holding that employee's termination was due solely to employer's legitimate reduction in workforce and employee could not establish a *prima facie* case of discrimination); *Ahmed v. Am. Red Cross*, 218 F.3d 932, 933 (8th Cir. 2000) (same). Tobacco was terminated as part of ARI's RIF because: (1) her position was largely funded from internal money, whereas the other two managers were primarily grant funded; (2) she was only supervising 1employee, whereas the other ARI managers were each supervising over 20 employees; (3) there were not a lot of research studies happening at ARI's Pine Ridge location at that time; (4) there was not a pipeline for upcoming studies at ARI's Pine Ridge location; (5)

32

Appellate Case: 25-2881    Page: 41    Date Filed: 01/20/2026 Entry ID: 5598399

there were a multitude of projects and activities happening at the other ARI locations; and (6) a manager was not needed at the Pine Ridge location. App. at 67; R. Doc. 22-3, at 17; Elliott Depo. at 138:1-16.

The burden, therefore, shifts back to Tobacco to show, with admissible evidence, that ARI's stated rationale "was a mere pretext for discrimination." *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 792 (8th Cir. 2004) (citation omitted). "To survive summary judgment as to pretext, an employee must both discredit the employer's articulated reason and demonstrate the 'circumstances permit a reasonable inference of discriminatory animus' . . . An employee's attempt to prove pretext requires more substantial evidence of discrimination than required to make a *prima facie* case because we view this evidence in light of the reasons articulated by the employer." *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 611 (8th Cir. 2014).

Tobacco "must do more than show that the employment action was ill-advised or unwise, but rather [she] must show that [ARI] has offered a 'phony excuse.'" *Henderson v. Ford Motor Co.,* 403 F.3d 1026, 1034 (8th Cir. 2005) (citations omitted). Indeed, "employment discrimination laws have not vested the courts with the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Hutson v.*

33

*McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *see also Strate v. Midwest Bankcentre, Inc.,* 398 F.3d 1011, 1017 (8th Cir. 2005) ("'pretext,' 'pretextual' or similar terminology, often must be read as shorthand for indicating that a defendant's proffered discriminatory explanation for adverse employment action is a pretext *for unlawful discrimination,* not that it is merely false in some way").

Tobacco must come forward with admissible evidence to carry her burden. *See Gibson v. Am. Greeting Corp.,* 670 F.3d 844 (8th Cir. 2012) (granting summary judgment in favor of the employer and noting the plaintiff failed to point to enough "admissible" evidence to raise a genuine doubt as to the legitimacy of the employer's motive). Self-serving allegations will not suffice. *See Smith, supra,* at 848-49. Bare assertions and speculation are also not enough. *See O'Brien v. Department of Ag.,* 532 F.3d 805, 811, n. 3 (8th Cir. 2008) (granting summary judgment in favor of the employer and noting that bare assertions and speculation as to the employer's motives do not create genuine issues of material fact). Neither is conjecture or fantasy sufficient. *See Habib*, *supra*, at 567.

Pretext may be established in a number of different ways. *Schaffhauser*, 794 F.3d at 904. Here, Tobacco asserts pretext under the prescribed methods of (1) the "employer's explanation is unworthy of credence ... because it has no basis in fact";

34

(2) timing; (3) a failure to follow policies; and (4) a prohibited reason. *Id.* All arguments fail.

1. Tobacco has not shown that ARI's explanation has no basis in fact.

When you appropriately look past the plethora of immaterial and inconsequential facts set forth in Tobacco's brief, the crux of her argument becomes clear – that she was not truly fired as part of a legitimate RIF, but instead was terminated due to her race. Appellant's Brief at 36-39. To show that ARI's termination of Tobacco was mere pretext for discrimination and, in turn, avoid summary judgment based on this argument, Tobacco must show that Avera's RIF explanation is unworthy of credence because it has *no* basis in fact. *See Schaffhauser*, *supra*, at 904. Tobacco has not even come close to meeting this burden.

Here, it is not legitimately in dispute that in 2022, in the midst of the pandemic, Avera McKennan had to reduce administrative costs, and to do so, a RIF occurred. App. at 79; R. Doc. 23, at 1. In fact, as part of the RIF, there were over 150 Avera McKennan employees who had to be terminated, 95% of whom were Caucasian. *Id.* It is also not legitimately in dispute that at the beginning of June 2022, Dr. Elliott and other leaders were given a directive by her supervisor to reduce ARI's budget by 5% or to increase ARI's revenue by 5%, for which the RIF occurred. App. at 62; R. Doc. 22-3, at 12; Elliott Depo. at 109:19-25, 110:1-11;

35

Appellate Case: 25-2881    Page: 44    Date Filed: 01/20/2026 Entry ID: 5598399

App. at 32; R. Doc. 22-1, at 4; Hockett Depo. at 25:7-23; App. at 521; R. Doc. 37, at 1. Tobacco has not, and cannot, legitimately dispute these facts. Nor can she dispute the fact that ARI could not realistically increase its revenue by 5%. App. at 521; R. Doc. 37, at 1. Therefore, Avera's explanation that Tobacco was terminated as part of a RIF is worthy of credence because it is supported by concrete facts.

Tobacco argues that terminating her as part of the RIF lacks a factual basis because she speculates that Dr. Elliott could have increased ARI's funding rather than eliminating her position. Appellant's Brief at 36-37. As the District Court properly recognized, "Tobacco's broad and conclusory assertion that ARI could have, in her view, avoided the RIF is not tethered to evidence that the RIF decision itself is unworthy of credence." App. at 544; R. Doc. 40, at 22; Add. at 24. Tellingly, this argument ignores that it was internal money (non-grant money) that needed to be reduced, and there was no mechanism to get grant money anytime soon to fund Tobacco's position. App. at 521-22; R. Doc. 37, at 1-2. Instead, the only option Dr. Elliott had was to reduce ARI's internal budget by 5%. *Id.* Further, there is no evidence that this decision was made to intentionally discriminate, rather than as a business judgment made by ARI. *See Hutson*, 63 F.3d at 781 ("[E]mployment discrimination laws have not vested the courts with the authority to sit as super-personnel departments reviewing the wisdom or fairness of the

36

Appellate Case: 25-2881     Page: 45     Date Filed: 01/20/2026 Entry ID: 5598399

business judgments made by employers, except to the extent that those judgments involve intentional discrimination.").

Moreover, it is not for Tobacco or this Court to direct how ARI met the financial needs. As to her repeated argument about Dr. Elliott not performing a specific budget calculation, ARI addressed it above (*see supra*, at pages 21-22, fn. 10) establishing it was not required or needed as Dr. Elliott and her supervisor were well-aware what reducing the Pine Ridge manager position would do as to the internal operational costs *Id*. Further, as the District Court properly explained, "[e]ven assuming that a budget calculation would have revealed to Dr. Elliott that the RIF did not achieve a 5% reduction in ARI's budget or revealed something worse budget-wise, 'employers are free to make employment decisions based upon mistaken evaluations, personal conflicts between employees, or even unsound business practices.'" App. at 544; R. Doc. 40, at 22; Add. at 24; (quoting *Hervey v. Cnty. Of Koochiching*, 527 F.3d 711, 720 (8th Cir. 2008)). These arguments fail to establish that ARI's explanation for terminating Tobacco's position as part of the RIF had no basis in fact.

2. <u>The timing of Tobacco's termination does not establish pretext.</u>

Tobacco next argues that the timing of Tobacco's termination, being done swiftly, supports that it was mere pretext for racial discrimination. Appellant's Brief at 37. It does not. As Dr. Elliott explained at her deposition: (1) terminating

37

Appellate Case: 25-2881   Page: 46   Date Filed: 01/20/2026 Entry ID: 5598399

Tobacco was an agonizing decision for her to make and she wanted to get it over with; (2) she did not want the decision dragging out because she wanted Tobacco to hear the news from her and not another source; and (3) she wanted to do it before the beginning of a new pay period that was imminent. App. at 67; R. Doc. 22-3, at 17; Elliott Depo. at 140:3-19.

Tobacco also half-heartedly argues that the timing of when Dr. Elliott discussed Tobacco's complaints with her boss relative to when she was terminated establishes pretext. Appellant's Brief at 39. Tobacco's argument in this regard misses the mark. Once again, Tobacco is attempting to wedge arguments that would potentially support a race retaliation claim, not a race discrimination claim. Tobacco cannot bootstrap her discrimination claims to allegations that amount to a retaliation claim. Moreover, Tobacco cites to no legal authority to support that the temporal proximity between an employee's complaint and their termination can establish pretext in a race *discrimination* claim. This is because this analysis is reserved for claims of race *retaliation*. *See Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 977–78 (8th Cir. 2006); *see also Johnson v. Arkansas State Hosp.*, 282 F. App'x 497, 499 (8th Cir. 2008). Even in a race retaliation claim, more than a temporal connection is required to create a fact question as to pretext. *See Arraleh*, *supra*, at 977-78. There is no evidence supporting that the timing of her termination was related to her race.

38

Appellate Case: 25-2881    Page: 47    Date Filed: 01/20/2026 Entry ID: 5598399

There is no evidence supporting that timing issues related to the termination were related to her race.

### 3. ARI's alleged failure to follow its RIF and discrimination policies does not establish pretext.

Tobacco then argues that ARI did not follow its RIF and discrimination policies, thereby creating pretext. Appellant's Brief at 37-39. It does not.

As to the RIF policy, ARI explained above (*see supra*, at pages 21-22) how the RIF policy applied to ARI's structure was unique and its material terms were complied with. For instance, due to ARI's structure, the only mechanism to meet the funding issue was to eliminate the Pine Ridge manager position. App. at 521-22; R. Doc. 37, at 1-2. Further, the RIF policy expressly states, "Avera reserves the right to reduce the staff to best suit department and patient/resident needs." App. at 339; R. Doc. 32-11, at 15. Further, there is not even evidence to support Dr. Elliott did not consider all the criteria she was supposed to consider under the RIF policy, as she testified she considered that which was germane. App. at 56, 63; R. Doc. 22-3, at 6, 13; Elliott Depo. at 31:16-25, 32:1-6, 116:16-22. Moreover, even when assuming, *arguendo*, that ARI did not follow the RIF policy, other than Tobacco's speculation and conjecture, there is no evidence to support that ARI doing so was due to her race thereby unlawfully discriminating against Tobacco in doing so. *See Schaffhauser*, 794 F.3d at 904 ("An employer can certainly choose how to run its business, including not to follow its own personnel policies regarding termination

39

of an employee or handling claims of discrimination, as long as it does not unlawfully discriminate in doing so."). Tobacco's speculation and conjecture are not sufficient.

ARI also explained above (*see supra*, at pages 9-10) how it terminated Tobacco so she would get the full severance pay instead of demoting her and requiring her to move away from the only placed she ever lived, and with the ability to then become immediately employed in such a position but keeping her full severance. App. at 61; R. Doc. 22-3, at 11; Elliott Depo. at 92:12-21; App. at 48; R. Doc. 22-2, at 10; Frederick Depo. at 77:12-25, 78:1-14. There is no evidence to support that Dr. Elliott made this decision so she could unlawfully discriminate against Tobacco. As a result, not following the RIF policy in this regard also does not establish pretext. *See Schaffhauser, supra*, at 904. Moreover, this process was used for all similarly situated-employees involved in the nearly 150 RIF'd employees, regardless of their race. App. at 48; R. Doc. 22-2, at 10; Frederick Depo. at 79:14-25, 80:1-13; App. at 79; R. Doc. 23, at 1. *See Floyd v. State of Missouri Dep't of Soc. Servs., Div. of Fam. Servs.*, 188 F.3d 932, 937 (8th Cir. 1999) (holding departures in policy do not support pretext when they affect all similarly-situated employees).

Lastly, as to the transition policy involved in the RIF, ARI explained above (*see supra*, at pages 23-24) how Tobacco's allegations pertaining thereto are

40

Appellate Case: 25-2881     Page: 49     Date Filed: 01/20/2026 Entry ID: 5598399

patently inaccurate and unsupported. Further, even when assuming, *arguendo*, this policy was not followed, such a failure does not establish pretext because there is no evidence to support that this was not provided to her, so ARI could unlawfully discriminate against Tobacco. *See Schaffhauser*, *supra*, at 904. See *further* App. 544; R. Doc 40., at 22; Add. at 24 (District Court rejecting such argument, noting Tobacco did not show such failure was due to her race, and the employer can deviate from its policies so long as they did not do so due to race).

### 4. No prohibited reason motivated the termination decision.

Tobacco's final argument as to pretext is that because Dr. Elliott knew about Tobacco's complaints and discussed them with her boss, such knowledge/conduct shows that Tobacco's termination was mere pretext for discrimination. Appellant's Brief at 39. Yet, Dr. Elliott simply having knowledge of Tobacco's complaints and discussing them with her boss does not support ARI's reason for terminating Tobacco, the RIF, being offered as a phony excuse or a lie. *See Henderson, supra*, at 1034. As to any retaliation type of argument related to this issue, it is properly rejected as above set forth.

**IV. Tobacco Has Failed to Establish that She was Discriminated in Her Terms and Conditions of Employment Prior to Her Termination Based on Her Race.**

In addition to asserting her termination was discriminatory, Tobacco alleges much of the same conduct supports a general discrimination claim. Appellant's

41

Brief at 24-26. For instance, she asserts this general discrimination claim exists as she was: (1) excluded from ARI administration meetings and, in turn, experienced a loss of access to essential information; and (2) experienced a reduced participation in decision-making regarding door-to-door recruitment in Rapid City.[16] *Id.* These allegations are based solely on conjecture and speculation and should be rejected in this general discrimination claim, as they were regarding the RIF-termination claim.

    1.  <u>Standard applicable to Tobacco's general discrimination claims.</u>

A general discrimination claim is also analyzed under the *McDonnell Douglas* burden-shifting framework. *See Grant, supra*, at 773. Because Tobacco has presented no direct evidence of discrimination, she carries the initial burden of establishing a *prima facie* case of discrimination by showing she was a member of a protected class, she met ARI's legitimate employment expectations, she suffered

---

[16] Tobacco's argument was limited to these areas identified herein. Appellant's Brief at 25-26. Anything new raised in her reply brief is to be ignored as not previously raised. *See Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004) ("Since there was no meaningful argument on this claim in his opening brief, it is waived."); *see also Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 674 (8th Cir. 2012) (holding that an appellant waived an "issue by failing to provide a meaningful explanation of the argument and citation to relevant authority in their opening brief"); *see also Mississippi River Corp. v. F. T. C.*, 454 F.2d 1083, 1093 (8th Cir. 1972) ("Proper judicial administration requires that error relied upon should be asserted in appellant's opening brief.").

Appellate Case: 25-2881    Page: 51    Date Filed: 01/20/2026 Entry ID: 5598399

an adverse employment action,[17] and the circumstances give rise to an inference of discrimination based on race. *Id.* If done, ARI is to articulate a legitimate, nondiscriminatory reason for the adverse employment action for which Tobacco must then, by a preponderance of the evidence, show is pretext for discrimination. *Id.*

2.  Meeting absences do not show discrimination.

Tobacco alleges that she was discriminated against because she was excluded from ARI administration meetings and, in turn, experienced a loss of access to essential information – she did not know that a RIF had been mandated. Appellant's Brief at 25-26. Tobacco cannot meet her burden of establishing a *prima facie* case of discrimination regarding this allegation because she cannot show that the circumstances give rise to an inference of discrimination based on race. *See Grant*, *supra,* 841 F.3d at 773.

As set forth above in section II.1., in approximately mid-2021 (one year before she was terminated), Tobacco was told she did not have to attend the ARI administration meetings, so she did not have to sit and listen to extensive discussions about the ECHO project that she and her site were not involved in.

---

[17] To show she suffered an adverse employment action, Tobacco must show she suffered a disadvantageous change to the compensation, terms, conditions, or privileges of employment. *See Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55 (2024).

43

App. at 62-63; R. Doc. 22-3, at 12-13; Elliott Depo. at 112:19-25, 113:1-8. Other than Tobacco's self-serving allegations and speculation, which are properly ignored, there is no evidence to support that Tobacco was excluded from ARI administration meetings because of her race. Further, the fact that other managers participated in the ARI administration meetings and would thereby have been aware of the RIF is immaterial, as there is no evidence that any of these managers were involved in ARI's decision to terminate Tobacco as part of the RIF.

If this Court, nevertheless, determines that Tobacco has met her *prima facie* burden here, so the burden is then shifted to ARI, her discrimination claim still fails as ARI had a legitimate, nondiscriminatory reason for Tobacco not attending ARI administrative meetings – her attendance would have been a waste of her time because the meetings largely involved a project that she and her site were not involved in. App. at 62-63; R. Doc. 22-3, at 12-13; Elliott Depo. at 112:19-25, 113:1-8. *See Grant*, *supra*, at 773.

The burden, therefore, shifts back to Tobacco to show, with admissible evidence, that ARI's stated rationale was a mere pretext for discrimination. *See Erenberg, supra*, at 792. Tobacco "must do more than show that the employment action was ill-advised or unwise, but rather [she] must show that [ARI] has offered a 'phony excuse.'" *See Henderson, supra*, at 1034. Tobacco cannot meet her

Appellate Case: 25-2881    Page: 53    Date Filed: 01/20/2026 Entry ID: 5598399

burden of proving pretext because she cannot show that ARI's proffered rationale for her not attending administrative meetings was phony or a lie.[18]

### 3. Reduced Decision-Making as to SYNCH.

Tobacco's final allegation is that discrimination occurred because she experienced reduced participation in decision-making regarding door-to-door recruitment in Rapid City. Appellant's Brief at 25-26. Once again, Tobacco cannot meet her burden of establishing a *prima facie* case of discrimination regarding this allegation because she cannot show that the circumstances give rise to an inference of discrimination based on race. *See Grant*, *supra*, at 773. As set forth in detail above in section II.1., there is no evidence to support that there was a conspiracy by Palko and Medler and, in turn, by Andrews and Dr. Deutsch to undermine Tobacco's instruction to Palko and Medler to do door-to-door recruitment in Rapid City based on Tobacco's race. Her speculation is not sufficient.

If this Court, nevertheless, determines that Tobacco has met her *prima facie* burden here, so the burden is shifted to ARI, her discrimination claim still fails because ARI had a legitimate, nondiscriminatory reason for Palko and Medler bringing their safety concerns regarding door-to-door recruitment to Andrews and,

---

[18] As correctly recognized by the District Court as to her general discrimination claim, Tobacco did not raise that ARI's reasons for the alleged disparate treatment were pretextual. App. at 546; R. Doc. 40, at 24; Add. at 26. As a result, this argument should not be considered. *See generally* R. Doc. 29; *See also Alexander*, *supra*, at 742; *Fleck*, *supra*, at 1116.

45

in turn, for them not doing door-to-door recruitment in Rapid City. For instance, although Tobacco was made lead of SYNCH in Rapid City, Andrews was still Palko's and Medler's direct supervisor. App. at 49; R. Doc. 22-2, at 11; Frederick Depo. at 111:2-14; App. at 66-67; R. Doc. 22-3, at 16-17; Elliott Depo. at 133:8-18, 137:5-11. Therefore, when Tobacco dismissed their safety concerns regarding door-to-door recruitment in Rapid City, Palko and Medler appropriately went to Andrews regarding this issue. App. at 49; R. Doc. 22-2, at 11; Frederick Depo. at 111:2-14; App. at 67; R. Doc. 22-3, at 17; Elliott Depo. at 137:5-11. Further, Dr. Deutsch, the principal investigator on SYNCH, concluded (after discussions with the group) that door-to-door recruitment should not occur for reasons not related to Tobacco's race. App. at 72-73; R. Doc. 22-4, at 4-5; Deutsch Depo. at 64:2-25, 65:1-25, 66:1-15; App. at 64; R. Doc. 22-3, at 14; Elliott Depo. at 127:20-25, 128:1-5.

Because ARI has met its burden of showing legitimate nondiscriminatory reasons, Tobacco must prove, with admissible evidence, that ARI's stated rationale was a mere pretext for discrimination. *See Erenberg, supra*, at 792. Tobacco cannot meet her burden as she cannot show that ARI's proffered rationale for why Palko and Medler brought their safety concerns regarding door-to-door recruitment to their direct supervisor was phony or a lie. *See Henderson, supra*, at 1034. Nor can Tobacco show that the basis for Dr. Deutsch's decision not to implement door-

46

to-door recruitment in Rapid City was phony or a lie.  Additionally, Tobacco presents no evidence that similarly-situated employees outside of her protected class were treated differently.

Notably, the "test for whether someone is sufficiently similarly situated . . . is rigorous." *Securitas Sec. Servs. USA, Inc.*, 769 F.3d at 613. "Tobacco must show that [s]he and the employees outside of [her] protected group were similarly situated in all relevant respects.'" *Id.* Individuals used for comparison must have "engaged in the same conduct without any mitigating or distinguishing circumstances." *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000). Here, neither Palko, Medler, nor Andrews is similarly situated with Tobacco in all relevant respects. For instance, unlike Tobacco, Palko and Medler are not full-time employees, they are not managers, nor were they the lead of any projects. App. at 517; R. Doc. 36-6, at 10; Elliott Depo. at 121:21-25, 122:1-3; App. at 73; R. Doc. 22-4, at 5; Deutsch Depo. at 66:16-25, 67:1-17. Further, although Andrews is a manager at ARI, unlike Tobacco, she was working on numerous other projects and supervising over 20 employees at her location. App. at 35; R. Doc. 22-1, at 7; Hockett Depo. at 98:25, 99:1-11; App. at 67; R. Doc. 22-3, at 17; Elliott Depo. at 138:1-16; App. at 472; R. Doc. 32-33, at 3; App. at 521-22; R. Doc. 37 at, 1-2. Additionally, unlike Tobacco, Andrews was always the direct supervisor of Palko and Medler. App. at 49; R. Doc. 22-2, at 11; Frederick Depo. at 111:2-14; App. at

47

Appellate Case: 25-2881     Page: 56     Date Filed: 01/20/2026 Entry ID: 5598399

66-67; R. Doc. 22-3, at 16-17; Elliott Depo. at 133:8-18, 137:5-11. Pretext is not shown.

## CONCLUSION

Tobacco failed to establish her required burdens to support her claims of discrimination related to her termination (RIF) and general employment terms prior to the termination. ARI requests that this Court affirm the District Court's dismissal of Tobacco's claims in their entirety.

Dated: January 16, 2026.                     Respectfully submitted,


*/s/ David J. Hieb*
Lisa Hansen
David J. Hieb
BOYCE LAW FIRM, LLP
300 S. Main Avenue
P.O. Box 5015
Sioux Falls, SD  57117-5015
Telephone: (605) 336-2424
lkmarso@boycelaw.com
djhieb@boycelaw.com
*Attorneys for Appellee*

Appellate Case: 25-2881    Page: 57    Date Filed: 01/20/2026 Entry ID: 5598399

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation under Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,216 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, using 14-point Times New Roman type style.

3. The undersigned counsel certifies under Eighth Circuit Rule 28A(h)(2) that the Appellee's Brief has been scanned for computer viruses and that the document is virus free.

*/s/ David J. Hieb*  
David J. Hieb

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 16, 2026, I electronically filed with the Clerk of the Court for the United States District Court for the Western Division by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ David J. Hieb*  
David J. Hieb

Appellate Case: 25-2881    Page: 58    Date Filed: 01/20/2026 Entry ID: 5598399